COMMONWEALTH vs. LEROY PETERSON.

Suffolk.    March 2, 1965. — March 31, 1965.

Present: WILKINS, C.J., SPALDING, KIRK, SPIEGEL, & REARDON, JJ.

*Sex Offender. Practice, Civil,* Sex offender. *Constitutional Law,* Due process of law, Sex offender. *Evidence,* Opinion: expert; Sex offender.

That a prisoner serving a sentence in a penal institution for an offence not of a sexual nature has no record of conviction for any sexual offence and has not been guilty of sexual misbehavior in the institution does not bar a proceeding against him under G. L. c. 123A, § 6, for his commitment as a sexually dangerous person [703–704]; so construed, § 6 does not deprive him of due process of law.    [704]

A finding in a proceeding under G. L. c. 123A, § 6, that the defendant was a sexually dangerous person, otherwise warranted by the evidence, was not precluded by the fact that a psychiatrist who had examined the defendant at a treatment center during a sixty day commitment, after reporting and testifying on direct examination that the defendant was a sexually dangerous person, gave on cross-examination a definition of such a person which did not conform in all respects to the definition in § 1 of c. 123A.    [705]

PETITION for commitment filed in the Superior Court on July 29, 1963.

The case was heard by *Lurie,* J.

*Joseph A. Melley,* Assistant District Attorney (*Thomas J. Mundy, Jr.,* with him), for the Commonwealth.

*Louis M. Nordlinger* for the defendant.

SPALDING, J.    On August 7, 1962, the grand jury for Suffolk County returned two indictments, in each of which the defendant was charged with an assault with a dangerous weapon on a police officer.    The defendant pleaded guilty to these indictments on October 11, 1962, and was sentenced to two concurrent indeterminate terms at the Massachusetts Correctional Institution at Concord (Concord).

On May 6, 1963, while the defendant was serving these sentences, the superintendent of Concord filed with the appropriate clerk of the Superior Court a motion and report. The motion, which was filed under G. L. c. 123A, § 6, sought a commitment of the defendant to the treatment center, established in § 2, for examination and diagnosis for a period not exceeding sixty days.    With his motion, the su-

perintendent filed a report of the prison psychiatrist dated
March 5, 1963, in which the psychiatrist stated that it was
his opinion that the defendant might be a sexually dan-
gerous person. These papers were presented to a judge of
the Superior Court who ordered the defendant committed
forthwith to the treatment center at Bridgewater for sixty
days for examination and diagnosis. Thereafter, two psy-
chiatrists regularly assigned to such commitments filed with
the court a paper entitled, "Report of Psychiatrists to the
Court (G. L. c. 123A, § 6)." On July 29, 1963, the district
attorney for Suffolk County filed a petition for commitment
of the defendant as a sexually dangerous person.

Thereafter a hearing was held before a judge of the Su-
perior Court to determine whether the defendant was to be
adjudged a sexually dangerous person. At this hearing,
in which the defendant was represented by counsel, the re-
port of the psychiatrists was admitted in evidence. In ad-
dition there was testimony of several witnesses called by
the district attorney. The judge found that the defendant
was a sexually dangerous person, and ordered him com-
mitted to the treatment center at Bridgewater for an inde-
terminate period of from one day to life. G. L. c. 123A,
§ 6. The defendant excepted to the denial of his motion to
dismiss and to the refusal of certain requests for rulings.

1. The defendant's motion to dismiss was rightly denied.
He contends that since he was not serving sentences for
offences of a sexual nature, had no record of conviction for
sexual offences, and there was no evidence of any sexual
misbehavior while in prison, he could not be committed as a
sexually dangerous person under c. 123A. To hold other-
wise, it is argued, would result in an unlawful and un-
constitutional deprivation of the defendant's liberty. We
disagree.

The defendant was committed under § 6 of c. 123A, which
provides that a commitment proceeding may be commenced
"[i]f a prisoner under sentence in any . . . prison . . .
*appears* to the . . . superintendent . . . to be a sexually
dangerous person and in need of the care and treatment
provided at the center" (emphasis supplied). Nowhere in

that section is there any requirement that the prisoner must have been previously convicted of a sex offence or have been guilty of sexual misbehavior in prison. Section 6, thus, is quite different from §§ 4 and 5 under which it is expressly provided that that commitment procedure can be initiated only after a defendant has been found guilty of one of the sexual offences there enumerated.

Contrary to the defendant's contention, it is not necessary to read such requirements into this section in order to accord the defendant due process of law. The procedure established by § 6 is as follows. After the superintendent is satisfied that a prisoner is sexually dangerous and in need of treatment and care, he must notify the Commissioner of Mental Health, who shall thereupon cause the prisoner to be examined by a psychiatrist. The psychiatrist shall report the results of his examination in writing to the superintendent. If the report indicates that the prisoner may be a sexually dangerous person the superintendent shall transmit this report to the appropriate clerk of the Superior Court, together with a motion that the prisoner be committed to the center for examination and diagnosis for a period not exceeding sixty days. Thereafter, the court, if satisfied that the motion should be granted, commits the prisoner to the center under the provisions of § 4. Under that section the examination and diagnosis of the prisoner must be under the supervision of not less than two psychiatrists who shall, within the commitment period, file with the court a written report of their examination and diagnosis, together with their recommendation as to disposition. If the report "clearly indicates that . . . [the] prisoner is a sexually dangerous person" the district attorney shall file a petition to have the prisoner committed to the center for treatment and rehabilitation. Only then can the Superior Court, after notice and hearing, commit the prisoner to the treatment center for an indeterminate period.

It is plain, we think, from the foregoing analysis that a commitment under § 6 cannot be the result of hasty or arbitrary action, and that the rights of a prisoner are carefully protected.

2.   Of the requests for rulings which were refused, we need consider only two (9 and 10), for the others have not been argued.   These in substance asked the judge to rule that the evidence would not permit a finding that the defendant was a sexually dangerous person.   The basis for these requests is that one of the psychiatrists who had examined the defendant did not know the meaning of the term ''sexually dangerous person'' as used in c. 123A.

One of the psychiatrists who examined the defendant during his sixty day commitment at the treatment center was Dr. Harold W. Williams.   He, together with Dr. Newman Cohen, signed the report required by §§ 6 and 4, in which they both were of opinion that the defendant was a sexually dangerous person as defined in c. 123A.   This report was admitted in evidence at the hearing in the Superior Court.   See §§ 6 and 5.   Dr. Williams, as did Dr. Cohen, testified at the hearing.

On direct examination, Dr. Williams was asked whether the defendant was ''a sexually dangerous person as defined by law.''   He replied that in his opinion the defendant ''was definitely a sexually dangerous person.''   He then proceeded to outline in some detail his reasons for this opinion.   On cross-examination, Dr. Williams was asked to give a definition of a sexually dangerous person.   Some of the answers elicited were not precisely in accord with the definition set forth in § 1 of c. 123A.   Because of these answers the defendant would have us hold that the evidence afforded an insufficient basis for the judge's finding.   This we decline to do.   That the doctor's definition did not conform in all respects with that in the statute did not put his opinion out of the case, although it might have affected its weight.   See *Commonwealth* v. *Dagle,* 345 Mass. 539, 543.   The ultimate decision as to whether the defendant was a sexually dangerous person was for the judge to determine on all the evidence.   We are of opinion that the finding of the judge was amply warranted on the evidence, and that the requests were rightly refused.

*Exceptions overruled.*