## COMMONWEALTH *vs.* MARIO BURNS
## (and a companion case[1]).

No. 95-P-1747.

Suffolk. January 6, 1997. - July 31, 1997.

Present: SMITH, GREENBERG, & FLANNERY, JJ.

*Practice, Criminal,* Appeal, Disclosure of evidence, Preservation of evidence, Challenge to jurors. *Rules of Appellate Procedure. Constitutional Law,* Search and seizure, Probable cause. *Search and Seizure,* Probable cause. *Probable Cause. Jury and Jurors.*

In a criminal case in which a defendant failed to file a notice of appeal within the time limits set forth in Mass. R.A.P. 4(b) & (c), and 14(b), a Superior Court judge was without authority to allow the late appeal; this court allowed the Commonwealth's motion to dismiss the defendant's appeal. [265-266]

An affidavit in support of an application for a search warrant to search an automobile established probable cause to support the issuance of the warrant, where it was based on information supplied by the (named) victim and reasonable inferences therefrom. [267]

A Superior Court judge correctly denied a criminal defendant's motion to dismiss indictments based on the Commonwealth's destruction of "potentially exculpatory" evidence (three latent fingerprints), where the defendant did not establish a reasonable possibility based on concrete evidence that access to the fingerprints would have excluded him as a participant in the crime or suggested the presence of another. [267-268]

The record of a criminal proceeding supported the conclusion that the Commonwealth complied with a discovery order, and the defendant's motion to dismiss based on the alleged violation of the order was correctly denied. [268-269]

This court declined to decide an issue regarding peremptory challenges to jurors not properly preserved at the trial of indictments; in any event, there was no showing of impropriety in jury selection. [269-270]

INDICTMENTS found and returned in the Superior Court Department on August 7, 1992.

Pretrial motions to suppress evidence were heard by *Barbara J. Rouse,* J., and the cases were tried before her.

---

[1]Commonwealth *vs.* Ricardo Middleton.

*John Salsberg* for Mario Burns.

*Bruce W. Carroll* for Ricardo Middleton.

*John P. Zanini*, Assistant District Attorney, for the Commonwealth.

*Alan M. Dershowitz, Nathan Lewin, Julie L. Mendell, Mark A. Michelson & A. Van C. Lanckton*, for the Harvard Jewish Law Students Association & others, amici curiae, submitted a brief.

FLANNERY, J. A Superior Court jury convicted Mario Burns and Ricardo Middleton of assault and battery by means of a dangerous weapon, G. L. c. 265, § 15A(*b*), and Burns additionally of possession of a firearm and possession of ammunition, G. L. c. 269, §§ 10(*a*) and (*h*), as in effect prior to St. 1996, c. 20.[2] Both defendants appeal. The Commonwealth moves to dismiss Burns's appeal for failure to file timely the notice of appeal required by the Rules of Appellate Procedure. We allow the Commonwealth's motion. Middleton contends that the judge erroneously: (1) denied his motion to suppress evidence seized from his car pursuant to a search warrant; (2) allowed the Commonwealth to exercise impermissibly its peremptory challenges to exclude prospective jurors who were presumably Jewish; and (3) denied his motion to dismiss his indictments because of the Commonwealth's destruction of potentially exculpatory evidence. We affirm the judgment as to Middleton.

We summarize the facts that the jury could have found at trial: On the evening of July 9, 1992, the then fourteen year old victim, DeVaughn Woods, who lived on Hansborough Street in the Dorchester section of Boston, was shot while walking near the corner of Brookview Street and Blue Hill Avenue in Dorchester. Burns, armed with a silver handgun, shot the victim — hitting him once in the back — from the passenger-side window of a black Dodge Daytona automobile driven and owned by Middleton. The victim was rushed to a nearby hospital. Although he survived, he is paralyzed from the waist down.

At trial, the defendants asserted that they were not the assailants. Woods, however, identified Middleton as the driver and Burns as the shooter in photographic arrays before trial and again in court during trial. Although a witness to the shooting,

---

[2]The defendants were acquitted of armed assault with intent to murder, G. L. c. 265 § 18(*b*).

Jennifer Goodon, identified Burns as the shooter in court during trial, she did not definitively identify him in the pretrial photographic array.[3]

1. *Commonwealth's motion to dismiss the appeal of defendant Burns.* The Superior Court jury found Burns guilty on October 22, 1993, and the judge sentenced him on November 18, 1993. On January 13, 1995, Burns filed a "Motion to File Notice of Appeal Nunc Pro Tunc" in the Superior Court. Supporting this motion, trial counsel submitted an affidavit stating that he had prepared a timely notice of appeal in November 1993, but upon "recently check[ing] the defendant's file in the Clerk's Office [he] discovered that the Notice of Appeal had not been filed." Without comment, the trial court allowed the defendant's motion. The Commonwealth now moves to dismiss Burns's appeal as having been untimely filed contrary to Mass.R.A.P. 4(b) & (c), as amended, 378 Mass. 929 (1979), & 14(b), as amended, 378 Mass. 939 (1979). We agree.

Rule 4(b) provides that a notice of appeal "shall be filed with the clerk of the lower court within thirty days after the verdict or finding of guilt or within thirty days after imposition of sentence." Additionally, rule 4(c) states that "[u]pon a showing of excusable neglect, the lower court may extend the time for filing the notice of appeal by any party for a period not to exceed thirty days from the expiration of the time otherwise prescribed by this rule." Finally, rule 14(b) provides that, "for good cause shown," an *appellate court or single justice* may extend the time set forth in rule 4(c); "but neither the appellate court nor a single justice may enlarge the time for filing a notice of appeal beyond one year . . . from the date of the verdict or finding of guilt or the date of imposition of sentence, whichever date is later."

Thus, when read together, these rules provide that, although a lower court may enlarge the time for filing a notice of appeal up to sixty days after the verdict, finding of guilt, or imposition of sentence, only an appellate court may extend the time beyond sixty days, and even it cannot extend the time beyond one year from the verdict, finding of guilt, or imposition of sentence. *Miranda* v. *Commonwealth*, 392 Mass. 420, 421-422 (1984). *Commonwealth* v. *Cowie*, 404 Mass. 119, 120, 122 & n.8 (1989). See Reporters' Notes to Mass.R.A.P. 4, Mass. Ann.

---

[3]Goodon chose two photographs from the array as depicting the shooter. One was a photograph of Burns.

Laws, Rules of Appellate Procedure, at 40-41 (Law Co-op. 1990). See also Mass.R.A.P. 2, 365 Mass. 845 (1974) (permitting flexibility in requirements of appellate rules "except as otherwise provided in Rule 14[b]"); Mass.R.A.P. 3(a), as amended, 378 Mass. 927 (1979) ("[f]ailure of an appellant to take any step *other than the timely filing of a notice of appeal* shall not affect the validity of the appeal" [emphasis supplied]).

Here, the defense filed its "Motion to File a Notice of Appeal Nunc Pro Tunc" in the Superior Court fourteen months after the imposition of the defendant's sentence. Such a motion is unrecognized by the relevant procedural rules or our case law. Even if we were to treat it as a motion to extend the time for filing a notice of appeal, it exceeds the authority of the trial court under rule 4(c). *Commonwealth* v. *Cowie, supra* at 120. And even if it had been properly filed with this court, it still would have exceeded the outer limits of our authority under rule 14(b). *Cowie, supra* at 122 n.8.

Contrary to Burns's argument, *Samuels* v. *Sufa Corp.*, 38 Mass. App. Ct. 922 (1995), does not help him here. The outcome in *Samuels* turned on facts in its record which supported the attorney's assertion that he timely filed a notice of appeal and that he had done all that was required to be done "within the period of time dictated by the Rules of Appellate Procedure." *Id.* at 923. Similar facts do not exist here. Moreover, unlike counsel in *Samuels*, counsel here bore an added duty imposed by Superior Court Rule 65, as amended (1990), in criminal cases, which provides that after defendant is advised of his right to appeal, "[d]efendant's counsel shall be responsible for perfecting and prosecuting the appeal unless such counsel is [allowed to withdraw]."

Nor do we read *Commonwealth* v. *Frank*, 425 Mass. 182 (1997), to change the result here. Although every defendant has "a clear statutory right to an appeal . . . [and] a clear constitutional right to the assistance of counsel in that appeal," *id.* at 184, *Frank* dealt with ineffective assistance of counsel *after* the timely filing of a notice of appeal. *Id.* at 183. Where, as here, the difficulty is the failure to file a timely notice of appeal, *Commonwealth* v. *Cowie*, 404 Mass. 119, controls, and nothing in *Frank* suggests otherwise. See *Commonwealth* v. *Frank, supra* at 185, citing with approval *Commonwealth* v. *Cowie, supra* at 122-123. Accordingly, the Commonwealth's motion to dismiss the appeal of Burns is allowed. We turn to the issues raised by Middleton.

2. *Sufficiency of affidavit supporting search warrant.* On July 13, 1992, four days after the shooting, Boston Police Detective John Martel applied for a warrant to search Middleton's 1985 black Dodge Daytona. Supporting the application, Detective Martel submitted an affidavit stating the factual basis for his belief that there was probable cause to search the car for evidence related to the shooting. The affidavit contained eight numbered paragraphs. Three of the paragraphs, containing facts supplied by the victim, described the shooting, the victim's statement at the scene that he had been shot by "Ricky" who lived on Callender Street, a confrontation between the victim and Middleton several days before the shooting, and the victim's identification of Middleton and Burns in photographic arrays as the driver of the black car and the shooter, respectively. One paragraph set forth facts provided by unnamed witnesses at the scene of the shooting stating that "Ricky Middleton" was the driver of the black Dodge Daytona from which the victim was shot. Another paragraph detailed an anonymous phone call to police stating that the caller had overheard a conversation between "Ricky" and Mario Burns bragging about having shot "a Hansborough dude on Blue Hill Avenue." The three remaining paragraphs discussed Middleton's alleged involvement in another shooting several weeks earlier and why the detective thought the information in the affidavit supported the issuing of a warrant to search the car.

Because the sources of some of the information in the affidavit were several untested confidential informants, Middleton, relying on *Commonwealth* v. *Upton,* 394 Mass. 363, 374-376 (1985), now argues that the affidavit did not establish probable cause to search his car. We are not persuaded by this argument. Regardless of the veracity of the unnamed witnesses and the anonymous caller, which, the defendant asserts, failed to satisfy the familiar two-pronged test set forth in *Aguilar* v. *Texas,* 378 U.S. 108 (1964), and *Spinelli* v. *United States,* 393 U.S. 410 (1969), the information supplied by the victim and the reasonable inferences to be drawn therefrom provided probable cause to search the car. See *Commonwealth* v. *Zagranksi,* 408 Mass. 278, 280 (1990).

3. *Destruction of evidence.*

a. *Fingerprints.* Middleton contends that the Commonwealth's destruction of three latent fingerprints taken from his car deprived him of his right to a fair trial because it was

"potentially exculpatory" evidence.[4] Determining whether the Commonwealth's destruction of evidence requires dismissal of the indictment or a new trial requires a defendant to establish "a 'reasonable possibility, based on concrete evidence rather than a fertile imagination,' that access to the [evidence] would have produced evidence favorable to his cause." *Commonwealth* v. *Olszewski*, 401 Mass. 749, 754 (1988), *S.C.*, 416 Mass. 707 (1993), cert. denied, 513 U.S. 835 (1994), quoting from *Commonwealth* v. *Neal*, 392 Mass. 1, 12 (1984). *Commonwealth* v. *Maimoni*, 41 Mass. App. Ct. 321, 330 (1996). Here, the defendant has made no such showing. Beyond suggesting that there is something fishy about the Commonwealth's explanation of why it destroyed the fingerprints, the defendant points to no "concrete evidence" showing that access to the fingerprints would have excluded him as the driver or suggested the presence of another. Accordingly, we conclude the judge correctly denied the defendant's motion to dismiss on this ground. See *Commonwealth* v. *Martinez*, 420 Mass. 622, 628-629 (1995).

b. *Investigator's notes.* The defendant also urges that the Commonwealth improperly destroyed original investigatory notes, thus violating a discovery order of another Superior Court judge. In substance, the discovery order, which was delivered orally from the bench and restated several times in slightly different variations, required the Commonwealth to provide the defendant "any material and relevant evidence" including "documents, statements of person or reports of physical or mental examinations of any person, or of scientific tests or experiments that are within the possession, custody or control of the district attorney's office or [the] police department."[5] Responding to the court's order, the principal detective in the case prepared a summary, which was given to the defendant, containing his notes originally written on various "lined sheets,

---

[4]The defendant alternatively requests dismissal of the indictment or a new trial.

[5]On appeal, the defendant has not included the order in his brief or appendix. "In order to be entitled to have this court consider and decide an issue, the defendant has the . . . burden of including in a record on appeal all of the evidence, facts, or information pertinent to the issue . . . ." *Commonwealth* v. *Bernier*, 366 Mass. 717, 720 (1975). See Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975). Usually, such an omission would prevent our review. See *Commonwealth* v. *Bernier*, *supra.* However, because the transcript of the hearing containing the discovery order has been provided by the Commonwealth, we address this issue.

. . . napkins, [and] . . . any piece of scrap paper [the detective] had in his pocket." Apparently concluding that the summary of the notes supplied to the defendant by the Commonwealth satisfied the earlier discovery order, the trial judge denied the defendant's motion to dismiss on this ground. The defendant's arguments that the trial judge erred and that the Commonwealth acted in bad faith are unpersuasive. On the record before us, and absent meaningful argument to the contrary, we conclude that the Commonwealth complied with the discovery order.

4. *Peremptory challenges.* After the judge conducted the general voir dire of the venire, fifteen venirepersons were seated in the jury box. The Commonwealth then exercised four peremptory challenges, removing potential jurors with the surnames Kronenberg, Alford, Downing, and King. These persons were replaced in the jury box and defendant Burns then exercised four peremptory challenges. Again, the seats were filled and the Commonwealth exercised another peremptory challenge to a potential juror with the surname Abraham.

Counsel for Burns immediately requested that the Commonwealth be required to give its reason for the challenge. Supporting his request, counsel asserted that this was the second potential juror "with a Jewish surname" — Kronenberg being the first — to be challenged by the Commonwealth, and it was his experience "over the years" that "when someone does have a Jewish surname . . . they are being challenged." Attempting to clarify the objection as it related to this case, the judge framed it as one concerning the religious affiliation of the two jurors, and treated the objection as an attempt to invoke the principles set forth in *Commonwealth* v. *Soares,* 377 Mass. 461, cert. denied, 444 U.S. 881 (1979). Concluding that *Soares* had not been properly invoked on the record before her, the judge did not require the Commonwealth to state reasons for the challenges.

Defendant Middleton did not object or join in Burns's objection. He now, however, argues that the Commonwealth impermissibly exercised two peremptory challenges to exclude jurors Kronenberg and Abraham because of their religious affiliation or national origin. *Soares* prohibits national origin or creed as a basis for juror exclusion. 377 Mass. at 489. See *United States* v. *Somerstein,* 959 F. Supp. 592, 595 (E.D.N.Y 1997). However, because Middleton did not object to the Commonwealth's exercise of its peremptory challenges at trial, the

issue is not properly before us. See *Commonwealth* v. *Burnett*, 418 Mass. 769, 770 (1994) (defendant objected); *Commonwealth* v. *Carleton*, 418 Mass. 773, 774 (1994) (same); *Commonwealth* v. *Mathews*, 31 Mass. App. Ct. 564, 566 (1991) (same). See also *United States* v. *Chandler*, 12 F.3d 1427, 1431 (7th Cir. 1994); Gertner & Mizner, The Law of Juries 4-55 (1997). Compare *Commonwealth* v. *Soares*, *supra* at 492 n.37 (nonobjecting codefendant granted new trial pursuant to court's power under G. L. c. 278, § 33E). Nor is this a case where the judge properly raised the issue sua sponte, *Commonwealth* v. *Curtiss*, 424 Mass. 78, 80 (1997), or in which Burns's objection at trial suffices to preserve the issue for Middleton because a separate objection would have been futile.

Were we to reach the merits of the defendant's argument, we would conclude that, on the record before us, he has not satisfied his initial burden of showing impropriety. See *Commonwealth* v. *Burnett*, 418 Mass. at 771. That is to say, the defendant asserts a conclusion, but he does not make the showing needed to establish the applicability of the factors set forth in *Commonwealth* v. *Soares*, *supra* at 490, or the fact-specific holding of *Commonwealth* v. *Carleton*, *supra* at 775.

5. *Conclusion.* The Commonwealth's motion to dismiss the appeal of defendant Burns is allowed, and the Superior Court judgment as to defendant Middleton is affirmed.

*So ordered.*